IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>LAMONT J. LEE,<br>    Defendant. | Case No. 1:13-cr-10114-JEH-1 |

**Order**

Now before the Court is a petition to revoke Defendant Lamont Lee's pretrial release (D. 44) and the question of this Court's authority to detain him pending a final hearing on a petition to revoke his supervised release. For the reasons stated *infra*, the Court holds that it does have the authority to detain Lee pending his final hearing on the petition to revoke supervised release. *See* (D. 47 & 48).[1]

**I**

**A**

On September 9, 2014, Lee, pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (D. 25). The Court sentenced him to 105 months of imprisonment, three years of supervised release, and a $100.00 special assessment. *Id.* His term of supervised release began on February 28, 2024 (D. 33 at ECF p. 1), and he is currently still serving that term. (D. 47 at ECF p. 1).

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

On March 20, 2025, the Government filed a petition to revoke Lee's supervised release, and the Court issued an arrest warrant for him on the same day. (D. 35 & 36). After Lee's arrest, the Court released him on conditions of pretrial[2] release following his initial appearance on April 11, 2025, pending the final revocation hearing currently set for September 25, 2025. *See* 04/11/2025 Minute Entry; *see also* 08/25/2025 Text Order. Thereafter, the Government filed two supplemental petitions to revoke Lee's supervised release on June 3, 2025, and July 9, 2025, respectively (D. 40 & 45), along with the petition to revoke his pre-revocation-hearing release. (D. 44). Based on the petition to revoke Lee's pre-revocation-hearing release, the Court issued a warrant for his arrest, and on July 16, 2025, he was arrested and brought before the Court for a hearing on the petition to revoke his pre-revocation-hearing release, as well as an initial appearance on the supplemental petitions to revoke his supervised release. *See* 07/16/2025 Minute Entry. The supplemental petitions were made part of the original, March 20, 2025, petition to revoke supervised release, and set for final disposition with it on the September 25, 2025 date. (D. 40 at ECF p. 3 & 45 at ECF p. 3); *see* 08/25/2025 Minute Entry.

Regarding the petition to revoke pre-revocation-hearing release, the Government asked the Court to revoke Lee's pre-revocation-hearing release pursuant to 18 U.S.C. § 3148 and detain him pending the final revocation hearing. (D. 47 at ECF p. 2). Lee objected, arguing that the Court did not have the statutory authority to detain him prior to the Court making a finding that he violated a condition of his supervised release at his final revocation hearing. *Id.* The Court directed the parties to brief the issue. *See* 07/16/2025 Minute Entry. Lee filed his

---

[2] Referring to the conditions as being those of "pretrial" release is inaccurate because Lee is not pending "trial." Rather, he is pending a "revocation hearing." Hereafter, the Court shall refer to Lee as being on conditions of "pre-revocation-hearing release" for the sake of clarity.

Memorandum of Law on the Court's Lack of Statutory Authority to Detain Citizens Based on the Filing of a Petition to Revoke Supervised Release on July 30, 2025. (D. 47). The Government filed its Response on the Court's Authority to Detain Defendants on Supervised Release Pending a Revocation Hearing on August 13, 2025 (D. 48), in addition to filing Memorandums of Supplemental Authority on August 25 and September 8, 2025. (D. 49 & 50). The matter is now fully briefed.[3]

**B**

The crux of Lee's argument begins with the Non-Detention Act, which states that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. § 4001(a). Because of the Non-Detention Act, the Court may only detain a citizen if an "Act of Congress" provides the Court with the authority to do so. *See id.* Lee argues that "[n]o act of Congress authorizes Mr. Lee's detention pending his final revocation hearing" and, so, the "Court has no authority to order Mr. Lee detained." (D. 47 at ECF p. 3). At the outset, Lee concedes that 18 U.S.C. § 3583(e) provides the Court with the statutory authority to revoke his supervised release and detain him if the Court makes a finding that he violated the conditions of release. *Id.* at ECF p. 7. However, before the Court makes such a finding, Lee maintains there is no authority to detain him based on a petition to revoke his supervised release that only *alleges* he violated a condition. *Id.* In particular, Lee argues that Federal Rule of Criminal Procedure 32.1(a)(6) — the Rule that governs "Revoking or Modifying . . .

---

[3] A procedural wrinkle in this case is that Lee was released on conditions when he initially appeared before the Court on the March 20, 2025 petition to revoke his supervised release. He is now facing detention due to a violation of his conditions of pre-revocation-hearing release. Lee argues that because this Court had no authority to detain him at his initial appearance on the petition to revoke his supervised release, that lack of authority entails a lack of authority to detain him for a violation of conditions of pre-revocation-hearing release as well. The Court assumes without deciding that if the Court lacks authority to detain a defendant on a petition to revoke supervised release, it also lacks authority to revoke a defendant's pre-revocation-hearing release pending a final hearing on the petition to revoke supervised release.

3

Supervised Release"—does not provide the Court with the authority to detain him and "abridge [his] substantive Fifth Amendment right to liberty" because federal law does not allow for any procedural rule to "abridge, enlarge or modify any substantive right." *Id.* at ECF p. 10 (citing 18 U.S.C. § 2072(b)). Lee maintains that, consistent with the Non-Detention Act, Rule 32.1(a)(6) does not authorize his detention because it, in turn, purports to rely on 18 U.S.C. § 3143(a)(1). He argues this statute is inapplicable to his circumstance because it only authorizes the detention of a person that has 1) "been found guilty of an offense" and 2) "who is awaiting imposition or execution of sentence . . . ." *Id.* at ECF p. 12 (citing 18 U.S.C. § 3143(a)(1)). Lee contends that while he is a person that "has been found guilty of an offense," "he is not awaiting imposition or execution of sentence." *Id.* In support, Lee explains that he is not "awaiting imposition . . . of sentence" because Judge Shadid already imposed his sentence on September 4, 2014, which included 105 months of imprisonment and 36 months of supervised release. *Id.* Furthermore, Lee argues that he is not "awaiting . . . execution of sentence" because his sentence was executed on the same day Judge Shadid remanded him to the custody of the United States Marshal. *Id.* Therefore, Lee argues that because he is neither awaiting imposition nor execution of his sentence, § 3143(a)(1) does not apply to him—particularly, where, as here, the Court has yet to make a finding as to whether he has violated a condition of his supervised release.[4] *Id.* at ECF p. 12-13. As a result, Lee maintains there is no statutory authority authorizing his detention prior to the Court making a finding as to whether he violated his conditions and, consequently, the Non-Detention Act requires his release. *Id.* at ECF p. 13.

---

[4] Lee concedes that if the Court were to revoke the term of supervised release, at that point, Lee would be "'awaiting imposition . . . of sentence' and § 3143 will apply." (D. 47 at ECF p. 13). He also concedes that if the Court "imposes a term of imprisonment" and allows Lee to self-report, "at that time Mr. Lee would be 'awaiting . . . execution of sentence' and § 3143 will apply." *Id.*

In response, the Government argues that Congress has provided the Court with the statutory authority to detain Lee pending his revocation hearing pursuant to 18 U.S.C. § 3143(a)(1). (D. 48 at ECF p. 5-6). In the Government's view, § 3143(a)(1) applies to Lee and authorizes his detention because "Defendants who are facing petitions to revoke their supervised release have, by definition, 'been found guilty of an offense'" and are "'awaiting imposition or execution of sentence'" under § 3143(a)(1) because the term of supervised release constitutes part of the original sentence and the "process of revoking a term of supervised release and imposing a term of reimprisonment is also part of that term's execution." *Id.* at ECF p. 6-7. In other words, the Government argues that, because "any penalty imposed upon a revocation [of supervised release] is part of the sentence for the original offense", Lee is therefore "awaiting execution and imposition of those aspects of his sentence." *Id.* Put another way, the Government believes § 3143(a)(1) applies to Lee and authorizes his detention because he "is awaiting the execution of an aspect of his sentence—proceedings to revoke his term of supervised release—and the imposition of any term of reimprisonment that may result." *Id.* at ECF p. 8. Therefore, in the Government's view, § 3143(a)(1) applies to Lee's circumstance and overcomes the obstacle posed by the Non-Detention Act's requirement that his detention be authorized by an "Act of Congress." *See* 18 U.S.C. § 4001(a)

## II

### A

For decades, federal courts' authority to detain defendants pending a final hearing on a petition to revoke supervised release has been unchallenged. Then, in *United States v. Mercado*, a court held for the first time that no such authority exists, being persuaded by the arguments that Lee makes here. 774 F. Supp. 3d 446, 455-56 (D. Conn. 2025) (concluding that neither Rule 32.1, 18 U.S.C. § 3143(a)(1),

5

nor 18 U.S.C. § 3583(e) provide the statutory authority to "detain individuals on supervised release prior to a finding that they have committed a violation of a condition of supervised release"), *vacated and remanded sub nom.*, 2025 WL 2433528 (2d Cir. Aug. 25, 2025). And, shortly thereafter, a magistrate judge followed *Mercado's* reasoning in *United States v. Wade* by similarly finding that he lacked the authority to detain the defendant pending his revocation hearing. 2025 WL 786383, at *4 (W.D.N.Y. Mar. 12, 2025) ("For the reasons discussed, I now conclude that I lack the authority to detain Wade pending his revocation hearing."), *rev'd,* 779 F. Supp. 3d 352, 360-61 (W.D.N.Y 2025).

Following those decisions, federal courts' authority to detain such individuals was cast into doubt, leading to a series of later cases by a number of district courts across the country raising the issue but reaching the opposite conclusion; namely, that federal courts do have the authority to detain individuals accused of violating their conditions of supervised release pending their revocation hearing, but those same courts often relied on different reasoning to reach the same conclusion. For example, in *United States v. Diaz,* 2025 WL 1470844, at * 4 (D. Nev. May 22, 2025), the court reasoned that while § 3143(a)(1) "on its face states 'detention pending sentence,' the Supreme Court has made clear that supervised release is part [of] the original sentence." "Thus, 'a defendant before the court on an allegation of violating a condition of supervised release has in fact been found guilty of the underlying offense and is awaiting imposition of that portion of the sentence attributable to the violation.'" *Id.* (quoting *United States v. DeShaw*, 2025 WL 1024315, at *2 (D. Mont. Apr. 7, 2025)). By contrast, in *United States v. Clark*, 779 F. Supp. 3d 352, 358-60 (W.D.N.Y. Apr. 17, 2025), the court concluded that "a person on supervised release who has been accused of a violation is 'awaiting . . . execution of [a] sentence' in that such a person is 'awaiting' the potential 'execution of' the additional term of imprisonment

6

authorized under the original 'sentence.'" *Clark* drew an analogy to when a person is sentenced to probation, and, similarly, "the court imposes a sentence of imprisonment but suspends the execution of that sentence unless and until the person violates the conditions set by the court." *Id.* Others have found the same for similar reasons. *See e.g., United States v. Stubbs*, 2025 WL 1094293, at *3 (W.D.N.Y. Apr. 11, 2025) ("In other words, the courts equate the time a defendant is on supervised release to a suspension of the execution of the original sentence insofar as he is released on certain conditions which, if violated, could result in reimprisonment attributable to his original conviction."); *United States v. Taylor*, 2025 WL 1076826, at *10 (W.D.N.Y. Apr. 10, 2025) ("Thus, whenever an individual serving a term of supervised release appears before the Court to answer for alleged violations of his [] release conditions, such proceeding necessarily involves an individual who 'has been found guilty of an offense' and is 'awaiting imposition and execution of sentence.'"); *United States v. DeShaw*, 2025 WL 1024315, at *2 (D. Mont. Apr. 7, 2025) ("[A] defendant before the court on an allegation of violating a condition of supervised release has in fact been found guilty of the underlying offense and is awaiting imposition of that portion of the sentence attributable to the violation."); *but see United States v. Richardson*, 348 F.R.D. 602, 604 (E.D.N.C. 2025) ("[E]ven if the court were to adopt *Mercado*, it would not lead to Richardson's release. Instead, doing so would deprive him of the only avenue available to obtain release . . . Federal law provides that 'a person on supervised release . . . may be arrested' if there is probable cause to believe that the person has violated the terms of their supervised release."); *United States v. Phillips*, 2025 WL 484706, at * 3 (W.D. Wash. Feb. 13, 2025) ("[T]he Court concludes that Fed. R. Crim. P. 32.1(a)(6), the Judiciary Act of 1789, and 18 U.S.C. § 401 each provide sufficient statutory authority to determine [the defendant's] detention status pending adjudication of his supervised release allegations.").

7

In the wake of *Mercado's* holding, the Second Circuit led the Courts of Appeal in first addressing the issue. *See United v. Fernandez*, 2025 WL 2433528, at *1 (2d Cir. Aug. 25, 2025).[5] There, the Second Circuit began with an overview explaining how a district court may "impose at the time of sentencing a post-imprisonment term of supervised release as an additional component of the sentence." *Id.* at 4. And that "supervised release is 'authorized by the original conviction, and so too are the consequences of its violation.'" *Id.* at 5 (quoting *United States v. Peguero*, 34 F.4th 143, 160 (2d Cir. 2022)). *Fernandez* reasoned that, under § 3143(a)(1), a defendant on supervised release has "been 'found guilty of an offense'" because the "statute's reference to 'offense' is to a defendant's original conviction." *Id.* at 7. And a "defendant who has allegedly violated the terms of his supervised release is also 'awaiting . . . execution' of his sentence under Section 3143(a)(1)" because when "a defendant has been charged with violating the terms of his supervised release, the defendant is then awaiting execution of the portion of his original sentence that allows for the imposition of consequences for violating the terms of supervised release, including revocation, after the application of the relevant procedures found in Section 3583 and Rule 32.1." *Id.* at 8.

Subsequently, the Third Circuit reached a similar conclusion in *United States v. Smalls*, 2025 WL 2553772, at *3 (3d Cir. Sept. 5, 2025), in which the Court cited to the Second Circuit's decision in *Fernandez* favorably. There, the Court observed that, under § 3143(a)(1), a person on supervised release has been found guilty of an offense because of the statute's reference to the original conviction, and, second, that a "person charged with violating a condition of his supervised release and awaiting the determination on whether that portion of his previously imposed sentence will be served on release or in custody is 'awaiting . . . execution' of his

---

[5] While this Court ultimately reaches the same conclusion as *Fernandez*, 2025 WL 2433528, at *9, for the reasons explained below, it does not rely on the same authority or reasoning in doing so.

sentence." *Id.* at 4. That is because "'[e]xecution' is the carrying out of the defendant's sentence" and the "supervised-release portion of any sentence originally imposed is, by its terms, conditional, incorporating the possibility of revocation." Therefore, "'it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms' of his release . . . ." *Id.* at 4 (quoting *United States v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993)).

With the same issue now squarely before this Court, and for the reasons that follow, this Court finds that it has the lawful authority to detain Lee and similarly situated individuals accused of violating the conditions of their supervised release prior to a final revocation hearing and therefore declines to follow *Mercado* and its progeny.

**B**

**1**

At the outset, the Court agrees with Lee that the Non-Detention Act is the beginning of the analysis. If Lee is to be detained, there must be a statute that authorizes his detention. *See* 18 U.S.C. § 4001. The Court also agrees that Rule 32.1(a)(6) alone cannot be the basis to detain Lee because procedural rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). In response, however, the Government contends that the appropriate statute granting the Court authority to detain Lee is 18 U.S.C. § 3143(a)(1), which is also cited by Rule 32.1(a)(6). *See* FED. R. CRIM. P. 32.1(a)(6). However, as explained further below, the Government's attempt to shoehorn Lee's circumstances onto § 3143(a)(1) falls short of the statute's plain language and ordinary meaning.

In answering the question of whether courts have statutory authority to detain a defendant like Lee between his initial court appearance on a petition to revoke supervised release and his final revocation hearing, Rule 46(d) states "Rule 32.1(a)(6) governs release pending a hearing on a violation of . . . supervised

release." FED. R. CRIM. P. 46(d). Rule 32.1(a)(6), titled "Revoking or Modifying . . . Supervised Release," instructs the Court to release or detain the person pursuant to 18 U.S.C. § 3143(a)(1). FED. R. CRIM. P. 32.1(a)(6). In turn, § 3143(a)(1) provides that a judicial officer shall:

> order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . ..

18 U.S.C. § 3143(a)(1). Thus, § 3143(a)(1) sets out two requirements that must be satisfied for it to apply to Lee. First, he must have "been found guilty of an offense" and, second, he must be "awaiting imposition or execution of sentence." *Id.*

Lee does not challenge that he qualifies as a person that has "been found guilty of an offense". (D. 48 at ECF p. 12). That leaves the Court to determine whether he qualifies as a person "who is awaiting imposition or execution of sentence" under § 3143(a)(1). He does not. As the Court in *Mercado* aptly observed, "[o]nly after a criminal defendant has been convicted or has pled guilty does the defendant *await* the imposition of their potential sentence; only after imposition of sentence can the defendant *await* the execution of the sentence." 774 F. Supp. at 452, *vacated and remanded sub nom.*, 2025 WL 2433528, at *1 (2d. Cir. Aug. 25, 2025) (emphasis in original). With respect to the former, Federal Rule of Criminal Procedure 32(b)(1) endorses that view insofar as after a guilty plea or conviction, "[t]he court must impose sentence without unnecessary delay." FED. R. CRIM. P. 32(b)(1). Consistent with that Rule, on September 4, 2014, the Court imposed a sentence of 105 months of imprisonment and 36 months of supervised release. (D. 47 at ECF p. 12). From that point on, Lee was no longer "awaiting imposition" of

10

his sentence. However, leading up to the date Lee was "received in custody awaiting transportation to . . . the official detention facility", 18 U.S.C. § 3585(a), Lee was "awaiting execution of sentence" under § 3143(a)(1) because his sentence had not yet commenced. *See* 18 U.S.C. § 3585(a). If the Court were to conclude otherwise, it would mean that the proceedings leading up to the adjudication of Lee's supervised release allegations would be treated the same as the execution of a sentence that resulted from a finding of guilt after a conviction or guilty plea, and the Court declines to depart from a statutory construction beyond the statute's plain language and its commonly understood meaning. *See Turley v. Gaetz*, 625 F.3d 1005, 1008 (7th Cir. 2010) (instructing a court to interpret a statute's language according to its ordinary meaning). Put differently, accepting the Government's view would mean that Lee is perpetually awaiting the execution of a sentence that has already been imposed and that he is already serving. And the Court has not found any authority to support the proposition that the ordinary meaning of a person "awaiting . . . execution of sentence" as that phrase is used in § 3143(a)(1) would include someone already serving a term on supervised release. *See Turley*, 625 F.3d at 1008. To hold otherwise would be inconsistent with the guiding principle that "people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cty., Georgia*, 590 U.S. 664, 674 (2020). Indeed, it stretches credulity to find that Lee is "awaiting" the "imposition or execution of [a] sentence"—that he is already serving—under § 3143(a)(1).

Many courts that have found § 3143(a)(1) provides them with the authority to detain defendants, like Lee, who have allegedly violated their conditions of supervised release prior to a final revocation hearing, have had to grapple with the mental and linguistic gymnastics necessary to conclude that § 3143(a)(1) authorizes their detention. For example, the Second Circuit in *Fernandez*, 2025 WL

11

2433528, at *8, concluded that a defendant charged with violating the terms of his supervised release is "awaiting execution of the portion of his original sentence that allows for the imposition of consequences for violating the terms of supervised release" such that, when viewed in the context of the entire sentence, "the initial carceral component of the sentence has been executed, the term of the supervised release is being executed, and any consequences for the violation, including the initiation of revocation proceedings, are awaiting execution."[6] But "overcomplicated and hyper technical interpretations cannot defeat common-sense plain readings of text." *United States ex. rel. Streck v. Eli Lilly and Co.*, 2025 WL 2618821, at *1 (7th Cir. Sept. 11, 2025). Moreover, and setting aside the lack of textual anchors in the analysis of § 3143(a)(1), the problem with the approach in *Fernandez* is that it intimates that the defendant's guilt is a foregone conclusion that is established solely by a petition to revoke that merely *alleges* the defendant violated his supervised release. 2025 WL 2433528, at *8. Instead, the determination of whether a condition of supervised release has been violated occurs at the final revocation hearing.

"It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the Courts.'" *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012)). "To do so 'is not a construction of a statute, but, in effect, an enlargement of it by the court.'" *Id.* (quoting *Nichols v. United States*, 578 U.S. 104, 110 (2016)). To adopt the reasoning of *Fernandez* would contravene those principles as the Court's reasoning aims to supply an absent provision by turning what it means to be "awaiting . . . execution of sentence" under § 3143(a)(1) into an

---

[6] In *United States v. Smalls*, 2025 WL 2553772, at *2-4 (3d. Cir. Sept. 5, 2025), the Third Circuit adopts similar reasoning and cites to the *Fernandez* decision favorably. The Government also put forward similar arguments in their brief. *See* (D. 48 at ECF p. 6-8).

umbrella term. This Court is hesitant to endorse an approach that so unnaturally maps onto the circumstances of this case, the text of § 3143(a)(1), and that would mean Lee is both executing his sentence while his supervised release remains in effect, and "awaiting . . . execution of sentence" with respect to consequences that may never come to pass. As a result, the Court determines that § 3143(a)(1) does not provide it with the authority to detain Lee.

## 2

However, the Court does conclude that 18 U.S.C. § 3606 provides the appropriate authority to detain Lee prior to his final revocation hearing. Titled "[a]rrest and return of a probationer", 18 U.S.C. § 3606 provides in relevant part:

> If there is probable cause to believe that . . . a person on supervised release has violated a condition of his . . . release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him . . . The court having supervision of the probationer or releasee . . . may issue a warrant for the arrest of a probationer or releasee for violation of a condition of release, and a probation officer or United States marshal may execute the warrant in the district in which the warrant was issued or in any district in which the probationer or releasee is found.

18 U.S.C. § 3606

So long as there is "probable cause" to believe that a "person on supervised release" has "violated a condition" of that "release", the plain language of § 3606 authorizes the arrest of that person. *Id.* Consistent with the authority provided by § 3606, the Court in this case issued an arrest warrant for Lee after the Government filed a Petition for Revocation of Supervised Release that alleged he committed multiple violations of the conditions of his release. (D. 36 & 35). When the arrest

warrant was issued, that necessarily included a finding by the Court that probable cause existed as to Lee's alleged violations of 18 U.S.C. § 3606. *See* U.S. CONST. amend. IV. Indeed, once the Court determined that probable cause existed and issued the warrant for his arrest concomitantly, his detention was authorized because all that the "Fourth Amendment requires [is] a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).[7] A "person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."[8] *Baker*, 443 U.S. at 143. Therefore, the Court's power to detain Lee—at least initially—flows from his lawful arrest, which was based on a warrant supported by probable cause that he violated the conditions of his supervised release and that was executed pursuant to an "Act of Congress" authorizing his arrest. *See* 18 U.S.C. § 3606; *see also United States v. Sadler*, 50 Fed. App'x 630, 630 (4th Cir. 2002) (citing 18 U.S.C. § 3606 and affirming the district court's orders because "the record indicates there was sufficient probable cause for the district court to find [the defendant] violated his supervised release, to issue a warrant for his arrest, [and] to have him detained pending a hearing on those charges"); *In re Moore*, 2000 WL 274220, at * 1 (D.C. Cir. Mar. 8, 2000) (citing 18 U.S.C. § 3606 and Rule 32.1 for the proposition that a "district court has authority to detain a defendant pending a revocation hearing if there is probable cause to believe he has

---

[7] "Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient." *Baker v. McCollan*, 443 U.S. 137, 144 (1979).

[8] Of course, the same is true with respect to a supervised releasee that has a final revocation hearing pending and who only enjoys "'a kind of conditional liberty [that] allow[s] him to serve part of his sentence outside of prison,' subject to conditions on his behavior." *Esteras v. United States*, 145 S. Ct. 2031, 2039 (2025) (quoting *Mont v. United States*, 587 U.S. 514, 523 (2019)).

14

violated the terms of supervised release"); Consequently, § 3606 satisfies the Non-Detention Act's requirement because at the time of the Defendant's Initial Appearance he was held in federal custody pursuant to an "Act of Congress." *See* 18 U.S.C. § 4001(a).

With the issue before it resolved, the Court's analysis of the issue could end. But it nonetheless continues its analysis to address outstanding confusion as to its authority to detain such individuals prior to the final revocation hearing.

### 3

In the course of the parties' efforts to demonstrate the Court's authority to detain the Defendant, or its lack thereof, they appear to have misinterpreted certain Federal Rules of Criminal Procedure and federal law. *See, e.g.*, (D. 47 at ECF p. 7-13 & D. 48 at ECF p. 20). As explained further below, the authorities both parties rely on to ostensibly make their cases as to detention actually function as a mechanism for Lee to secure his *release* prior to the final revocation hearing, as opposed to the constitutional floor which permits his *detention* based on a showing of probable cause alone. *See Gerstein*, 420 U.S. at 114.

When presented with a supervised release violation petition, 18 U.S.C. § 3583(e) directs the Court to follow the "Federal Rules of Criminal Procedure applicable to revocation of . . . supervised release". In the first instance, one such Rule is 32.1(b)(1)(A) which entitles a person to a preliminary hearing and probable cause determination only if that person is held in custody for allegedly violating a condition of supervised release.[9] FED. R. CRIM. P. 32.1(b)(1)(A).[10] That hearing is

---

[9] In this case, because Lee was released on bond after his initial appearance, *see* 04/11/2025 Minute Entry, he was not entitled to a preliminary hearing under Rule 32.1(b)(1)(A) because he was not held in custody. *See* FED. R. CRIM. P. 32.1(b)(1)(A).

[10] In contrast to Rule 5.1 which applies to all new, non-petty criminal offenses and grants all defendants the right to a preliminary hearing, a person alleged to have violated a condition of supervised is only entitled to a preliminary hearing if they are held in custody. *Compare* FED. R. CRIM. P. 5.1 *with* FED. R. CRIM. P.

adversarial and provides a defendant with an opportunity to contest the existence of probable cause; and, if the judge does not find probable cause, the judge must dismiss the proceeding. FED. R. CRIM. P. 32(b)(1)(B),(C). Further assuming the existence of probable cause under Rule 32.1(b)(1)(A), other Federal Rules of Criminal Procedure provide additional avenues for a defendant to secure his release pending the final revocation hearing. That analysis begins with Federal Rule of Criminal Procedure 46(d), which states that "Rule 32.1(a)(6) governs *release* pending a hearing on a violation of probation or supervised release." FED. R. CRIM. P. 46(d) (emphasis added). Lee argues Rule 32.1(a)(6) does not provide the Court with the authority to detain him. (D. 47 at ECF p. 10). The Court agrees, for Rule 46(d) directs that Rule 32.1(a)(6) governs release. FED. R. CRIM. P. 46(d). It does not state that it governs detention. *See id.* As the Court has previously explained, § 3606 already provides the Court with the authority to detain the Defendant so long as probable cause exists. *See* 18 U.S.C. § 3606; *see also Richardson*, 348 F.R.D. at 604 ("So at the time of his initial appearance, [the defendant] was held in federal custody pursuant to an act of Congress [under § 3606] that authorized the arrest of those who are believed to have violated the terms of their supervised release."). Instead, as explained below, what Rule 32.1(a)(6) does is provide a vehicle to obtain *release* from custody for a Defendant awaiting final revocation proceedings.

Other courts coming to this same conclusion have reasoned that if "18 U.S.C. § 3143(a)(1) does not apply to supervised releasees and Rule 32.1(a)(6) cannot adopt that statute's standard in the supervised release context, then there is no mechanism to allow [the defendant's] release ahead of his revocation hearing." *Richardson*, 348 F.R.D. at 605; *United States v. DeShaw*, 2025 WL 1024315, at *2 (D.

---

32.1(b)(1)(A). That a person on supervised release may only contest probable cause if the person is held in custody is consistent with their diminished liberty interest. *See Esteras v. United States*, 145 S. Ct. 2031, 2039 (2025).

Mont. Apr. 7, 2025) ("[I]f § 3143(a)(1) does not apply to supervised release proceedings, then Rule 32.1(a)(6) is a nullity, and the court cannot determine whether a defendant is eligible for release."). Therefore, the interpretation most supported by the text and that avoids rendering Rule 32.1(a)(6) a nullity, is to rely on it for guidance as to a defendant's release. *See Duncan v. Walker*, 553 U.S. 167, 174 (2001) (concluding that a court ought to give effect to every clause and word of a statute, if possible).

Rule 32.1(a)(6) provides:

> The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.[11]

FED. R. CRIM. P. 32.1(a)(6). In turn, 18 U.S.C. § 3143(a)(1) states in relevant part that:

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).

---

[11] Ordinarily, the burden is on the government to show that a person charged with an offense should not be released. *See* 18 U.S.C. § 3142(a). Notably, the burden is reversed in cases involving persons alleged to have committed violations of the conditions of their supervised release. That burden reversal is further evidence that the function of these Rules and related authorities is to provide guidance on when to release those persons because their detention is already authorized under § 3606 so long as it lawfully pursued.

Admittedly, § 3143(a)(1) adds little to Rule 32.1(a)(6) that is not already made explicit in the Rule. *Compare* 18 U.S.C. § 3143(a)(1) *with* FED. R. CRIM. P. 32.1(a)(6). Both place the burden on the defendant to establish by clear and convincing evidence that he will not pose a danger to any other person or to the community if released. *See id.* However, importantly, what Rule 32.1(a)(6) does gain by incorporating § 3143(a)(1), is the parameters by which the Court may *release* a defendant subject to the conditions that may be imposed under § 3142(b) or (c). Of course, any combination of those conditions may not always be able to satisfy the Court by clear and convincing evidence that the defendant will not flee or does not pose a danger to any other person or the community. Therefore, even though the text of Rule 32.1(a)(6) directs the Court to "release" or "detain" according to § 3143(a), it is not a substitute for the Court's power to detain Lee in the first instance pursuant to § 3606. That the Court has the power to release according to the burdens of Rule 32.1(a)(6) and § 3143(a) must necessarily include the power to deny that release—or detain Lee—if those same burdens are not met. And because Rule 32.1(a)(6) only governs the terms of release, it does not compel the Court to rely on § 3143(a) as the exclusive authority to detain Lee when § 3606 already permits it. It simply means that if the standards governing release under Rule 32.1(a)(6) and § 3143(a) are not met, the Court ought to continue detaining him pursuant to the original arrest based on probable cause to believe he violated a condition of his supervised release as already authorized by § 3606.

      That conclusion is in harmony with Rule 46(d), the starting point of the analysis, which states that "Rule 32.1(a)(6) governs *release* pending a hearing on a violation of probation or supervised release." FED. R. CRIM. P. 46(d) (emphasis added). If the drafters of Rule 46(d) wanted Rule 32.1(a)(6) to exclusively govern the Court's authority to detain, they could have easily included language to that effect. They did not. To the contrary, Rule 46(d) only states that Rule 32.1(a)(6)

governs release. *See* FED. R. CRIM. P. 46(d). That rings particularly true where Rule 32.1(a)(6) includes language relating to both release and detention, while the text of Rule 46(d) only instructs the Court to rely on Rule 32.1(a)(6) for guidance as to the appropriate release criteria. When the drafters have demonstrated the capacity to include both terms, "release" and "detain", in the text of Rule 32.1(a)(6), while at the same time including only the term "release" to the exclusion of the term "detain" from Rule 46(d), it provides strong textual evidence that the decision to do so was an intentional one. *See Rotkiske*, 589 U.S. at 14 ("Atextual judicial supplementation is particularly inappropriate when, as here, [the drafter] has shown that it knows how to adopt the omitted language or provision."). And while the Court agrees with Lee that under a plain reading of § 3143(a), he is not a person "awaiting imposition or execution of sentence," *see* 18 U.S.C. § 3143(a), in the interim, it is of no import because the Court need not rely on § 3143(a) for its authority to detain him—§ 3606 suffices. *See* 18 U.S.C. § 3606.

### III

In conclusion, because 18 U.S.C. § 3606 authorizes Lee's detention, the Court was therefore authorized to set conditions on his release prior to the revocation hearing pursuant to Rule 32.1(a)(6) and 18 U.S.C. § 3143(a)(1). Furthermore, upon consideration of the subsequent Petition for Action on Conditions of Pretrial Release (D. 44), and pursuant to 18 U.S.C. § 3148(a) and (b), the Court schedules a hearing on the Petition for Action on Conditions of Pretrial Release (D. 44) for September 25, 2025.

*It is so ordered.*

Entered on September 12, 2025

<u>s/Jonathan E. Hawley</u>
U.S. DISTRICT JUDGE